Earl A. Le Beouf and Margaret Manwell Le Beouf v. Commissioner.
Le Beouf v. Commissioner
Docket No. 3657-64.
United States Tax Court
T.C. Memo 1966-230; 1966 Tax Ct. Memo LEXIS 53; 25 T.C.M. (CCH) 1195; T.C.M. (RIA) 66230; October 20, 1966
*53 Petitioners claimed depreciation on furnished apartment buildings they operated. Their claimed basis was not shown on the returns or otherwise. Respondent determined that the depreciation claimed was overstated. Held: Petitioners have failed to prove error in respondent's determination. Robert E. Hunter, for the petitioners. Harry M. Asch, for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: Respondent determined deficiencies in income tax for the calendar years 1957, 1958, and 1959 in the amounts of $9,624.46, $7,842.18, and $7,990.76, respectively. The parties have stipulated settlement of all issues except one. The issue remaining for decision concerns the petitioners' basis for depreciation on one of several apartment buildings. Findings of Fact Some of the facts have been stipulated, and the stipulation of facts, together with exhibits attached thereto, is included herein by this reference. The petitioners are husband and wife and reside in San Francisco, California. They filed joint Federal income tax returns for the calendar years 1957, 1958, and 1959 with the district director of internal revenue at San Francisco. *54 The petitioners are owners and operators of several furnished rental properties in San Francisco and Alameda, California, which they acquired during the period 1937-1950. The petitioners maintained their own records and prepared their own tax returns without the aid of an accountant. One of the petitioners' apartment buildings is located at 1123 Clay Street, in San Francisco. This building was erected in 1921 and was acquired by petitioners in 1940. The type of construction was wood frame with stucco and wood exterior. Originally this property contained six apartments, two garages, and a wine cellar. Prior to 1950 the petitioners remodeled the building into nine apartments. On or about March 28, 1949, the petitioners' application for a building permit to convert storage space in the rear of a basement at 1123 Clay was approved. The application lists the total cost of such work to be $1,200. On or about July 25, 1949, petitioners' application for a building permit to convert garages on the ground floor of property at this address into two apartments was approved. The application lists the total cost of such work to be $1,800. The total amounts of the capital expenditures *55 by the petitioners for the years 1951 through 1959, consisting of additions to furnishings and improvements in all of petitioners' existing buildings, were as follows: Year
Amount
1951
$10,125.36
1952
19,616.13
1953
17,870.33
1954
32,476.37
1955
11,239.74
1956
19,149.96
1957
14,842.75
1958
9,524.55
1959
12,749.98
In July 1959 petitioners purchased a house trailer at a cost of $2,550. In an audit of the petitioners' tax returns for 1947 and 1948 the respondent made a schedule for depreciation on buildings. The schedule contains the following figures for the property at 1123 Clay Street: Acquired - 1940
Cost per taxpayer's Memo Records
Assumed 1st Mortgage
$16,000.00
Paid on loans on property about
5,300.00
Renovated and put in gas heat about
7,092.00
28,392.00
Depreciated cost 1/1/42
21,201.00
Depreciation allowed 1/1/42 to 12/31/46
3,175.67
Depreciated cost 1/1/47
18,025.33
Depreciation allowed, declining balance
method, 3% rate
1947
540.76
1948
524.54
Alterations 1948
589.39
Respondent determined that depreciation was allowable on 1123 Clay for the period 1949 through 1956 in the amount of $3,795.19, *56 computed the petitioners' basis in this building as of January 1, 1957, as $13,754.23, and allowed depreciation for 1957, 1958, and 1959 in the respective amounts of $412.63, $400.25, and $388.24. The computation was made on the declining balance method, at a 3 percent rate. Respondent allowed petitioners additional capital improvements to all their rental properties in the amount of $13,418.04 for 1949 and $29,703.90 for 1950. The following shows the depreciation allowed by respondent and the amount claimed by petitioners on their returns for the taxable years on all their buildings and equipment and on buildings alone: Allowed:
1957
1958
1959
Buildings
$11,331.77
$10,882.63
$10,066.42
Furnishings
1,743.37
1,569.03
1,412.13
Improvements
11,159.03
11,261.50
11,376.58
Automobiles
1,599.50
1,599.50
1,554.50
Total allowed
$25,833.67
$25,312.66
$24,409.63
Claimed: Total
40,895.07
44,271.86
43,116.73
On buildings
16,667.03
16,927.71
16,580.06
Opinion The petitioners have owned and operated several rental furnished apartments in and near San Francisco for over 20 years. On their returns for the taxable years 1957, 1958, and 1959 *57 they claimed deductions for depreciation on buildings and furnishings for several apartment buildings in amounts between $40,000 and $45,000 each year, of which some $16,000 to $17,000 each year was claimed on the buildings. The returns do not show the basis claimed for all the buildings nor for any single structure, nor do they show the method of computation elected, and the petitioners have introduced no evidence to support their figures. Respondent determined that the depreciation claimed was overstated. Other adjustments made in the notice of deficiency have been settled by stipulation. Respondent attached to the notice of deficiency a schedule of the depreciation determined to be allowable. The allowable amounts were classified in four separate schedules for (1) buildings, (2) furnishings, (3) improvements, and (4) automobiles. The schedule of buildings showed the amounts allowed by respondent for each of ten properties. The schedule of improvements lists the total amount of capital expenditures by the petitioners in each of the years 1949 through 1959 for additions to furnishings and improvements to existing buildings, without allocation to specific buildings. The amounts for *58 the years 1951 through 1959 are stipulated; the amounts for 1949 and 1950 are not. Respondent's starting point was based on schedules prepared in connection with an income tax audit of the petitioners' joint returns for 1947 and 1948. The contents of these schedules are by stipulation accepted as facts for the purpose of this case. These show the depreciated cost of each building and of all furnishings as of January 1, 1947, and depreciation allowable for 1947 and 1948. From these figures respondent has by projection calculated the depreciation allowable for the years 1949 through 1956, the basis as of January 1, 1957, and the depreciation allowable for the taxable years. The petitioners contend that the respondent's computation fails to recognize a substantial amount they expended in remodeling and renovating one of the rental properties - that at 1123 Clay Street. They allege in the petition that they expended $23,000 in improving this property and that depreciation on this is entirely omitted. On brief they say that the value of the improvements was $38,000 and that these expenditures were not taken as expense deductions nor were they allowed as additions on respondent's schedule *59 of allowable depreciation. The evidence of these expenditures is scanty. Margaret Manwell Le Beouf, one of the petitioners, testified that this building was in dilapidated condition; that a contractor did renovation work on the six apartments and installed hardwood flooring, new gas heating equipment in place of electric heat, new wiring in the apartments, and tile in the bathrooms; and that he converted the two garages and wine cellar into three new apartments. She introduced in evidence a small notebook containing on one page headed "Expenses 1947, 48 & 49 1123 Clay St." pencilled notations which she said showed the costs of this work. The notes are obviously not currently-kept records of the work alleged to have been performed. No dates other than as shown in the heading are mentioned. They are not self-explanatory and contain no details which would enable an intelligent analysis to be made of them. Nor did the petitioners offer any testimony or other evidence such as invoices, receipts or cancelled checks which might have explained them. One witness called by the petitioners said he had seen the property before, during, and after the alterations. The witness was a carpenter, *60 not a licensed building contractor, and had not done any of the work on the property. Another witness called as an expert by the petitioners was a licensed contractor. He had not performed any of the work on the premises and had not seen the property until shortly before the hearing. His estimate was based upon the petitioner's description of the condition of the property prior to the work. He estimated the costs of converting the wine cellar into an apartment as $10,000, of converting two garages into two apartments as $9,000 each, and of the work on renovating the six existing apartments as $10,000. His estimates are too speculative to be of any probative value. Respondent's computation shows acquisition of 1123 Clay in 1940. The costs used by respondent were taken from petitioners' records and include an amount of $7,092 for renovating and installing gas heat, which appears to be part of the expense now sought to be added to basis. The date of this work is not shown but it appears that this is part of the costs prior to 1942. Alterations in 1948 are allowed in the amount of $589.39. The depreciated cost as of January 1, 1947, is calculated as $18,025.33. Respondent's schedules *61 show allowance of additional capital improvements on all of the properties in the amount of $13,418.04 for 1949 and $29,703.90 for 1950. These are not allocated among the several buildings and it is not shown to what extent the alleged improvements of 1123 Clay are included in these figures. Petitioners complain that respondent's failure to show this is prejudicial to them, alleging that these figures are within the knowledge of respondent. The respondent necessarily derived these from the petitioners' figures. The petitioners have the burden of proof and should produce records to show the items which may properly be treated as costs of each property. Here they have offered no schedule or other evidence showing the costs of each property or of all of them collectively. Petitioners are relying on their memory for the amounts said to have been paid for the 1123 Clay Street renovation. The schedules made available by respondent show that costs of renovating and putting in gas heat were allowed in the amount of $7,092 as a part of the basis of this property. The building permits approved in 1949 describe the work of converting the garages and of converting "storage space," which would *62 appear to be what petitioners refer to as a wine cellar, and show the total costs of these conversions to be $3,000. If there were other building permits for additional amounts they have not been produced. No building plans were made available to show the extent of the conversion. Nor have petitioners produced or satisfactorily explained the failure to produce the testimony or records of the contractor, workmen, or suppliers of materials. The petitioners have failed to produce reliable evidence that these costs were greater and have failed to show that whatever amounts were paid for renovation have not already been allowed by respondent in the capital improvements allowed for 1949 or 1950. We sustain the respondent. Decision will be entered under Rule 50.